1 | GREENBERG TRAURIG, LLP
GREGORY F. HURLEY (SBN 126791)
2 | MICHAEL J. CHILLEEN (SBN 210704)
3161 Michelson Drive, Suite 1000
3 | Irvine, CA 92612
Telephone: (949) 732-6500
4 | Facsimile: (949) 732-6501
Hurleyg@gtlaw.com; Chilleenm@gtlaw.com
5 |
Attorneys for Defendant
6 | REGENCY THEATRES INC.

7

8 | **UNITED STATES DISTRICT COURT**

9 | **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

10

11 | GERALD CROSBY, For Himself and       CASE NO. 2:13-cv-01428-JFW-JEM
On Behalf of All Others Similarly
12 | Situated,                            [CLASS ACTION]

13 |         Plaintiff,                   **REGENCY THEATRES INC.'S
OPPOSITION TO PLAINTIFF'S**
14 | v.                                   **MOTION FOR CLASS CERTIFICATION**

15 | REGENCY THEATRES INC.,               Date:   July 8, 2013
                                     Time:   10:00 a.m.
16 |         Defendant.                   Dept.:  Courtroom 16

17

18 |                                      Action Filed:   January 29, 2013
                                     Trial Date:     None Set
19 |                                      Judge:          Hon. John F. Walter

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT ..........................................................................................................1

I.   PLAINTIFF'S MOTION SHOULD BE DENIED OUTRIGHT AS UNTIMELY. .....1

II.  PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS
NOT SHOWN GOOD CAUSE TO MODIFY THE SCHEDULING ORDER..................2

III. PLAINTFF'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF LACKS
STANDING. ...........................................................................................................2

    A.   Plaintiff Must Have Individual Standing To Raise Each Claim And Cannot
Fabricate Standing Merely By Making Class Allegations. .....................................2

    B.   In ADA Class Actions, The Named Plaintiff Must Show That He Has . Individual
Standing With Respect To Each Location He Is Suing. .........................................3

    C.   Plaintiff Must, But Cannot Show, That He Has Individual Standing  With
Respect To Any The Movie Theatre Locations. ...................................................8

IV. EVEN IF PLAINTIFF HAS STANDING (HE DOES NOT), HE CANNOT MEET
THE PREREQUISITES FOR CLASS CERTIFICATION ................................................13

    A.   Plaintiff Cannot Meet The Prerequisites Of Rule 23(a)........................................15

       1. Plaintiff Has Failed To Prove Commonality. ......................................................15

       2. Plaintiff Has Failed To Prove Numerosity. ........................................................16

       3. Plaintiff Has Failed To Prove Typicality. ...........................................................19

       4. Plaintiff And His Counsel Have Failed To Prove Their Adequacy. ....................20

    B.   Plaintiff Cannot Meet the Prerequisites Of Rule 23(b)(2), (3) Or Rule (c)(4). ....21

CONCLUSION ......................................................................................................25

i

# TABLE OF AUTHORITIES

**<u>Federal Cases</u>**

*Access 4 All v. Oak Spring, Inc.,*
   2005 WL 1212663 (M.D. Fla. 2005)..................................................................9

*Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd.,*
   2005 WL 2989307 (N.D. Tex. 2005)................................................................10

*Allee v. Medrano,*
   416 U.S. 802 (1974).........................................................................................3

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.,*
   603 F.3d 666 (9th Cir. 2010) ..........................................................................8

*Belles v. Schwieker,*
   720 F.2d 509 (8th Cir. 1983) ........................................................................19

*Boemio v. Love's,*
   Rest., 954 F.Supp. 204 (S.D. Cal. 1997).......................................................23

*Brooks v. Southern Bell Tel. & Tel. Co.,*
   133 F.R.D. 54 (S.D. Fla. 1990) .....................................................................19

*Buford v. H & R Block, Inc.,*
   168 F.R.D. 340 (S.D. Ga. 1996) ...................................................................16

*Campbell v. PricewaterhouseCoopers, LLP,*
   253 F.R.D. 586 (E.D. Cal. 2008) ..................................................................16

*Castro v. Collecto, Inc.,*
   256 F.R.D. 534 (W.D. Tex. 2009)................................................................22

*Celano v. Marriott Int'l, Inc.,*
   2007 WL 1149113 (N.D. Cal. 2007) ............................................................17

*Chandler v. City of Dallas,,*
   2 F.3d 1386 (5th Cir. 1993) ..........................................................................19

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
   631 F.3d 939 (9th Cir. 2011) ..........................................................................3

ii

*Clark v. Burger King Corporation*,
  255 F.Supp.2d 334 (D. N.J. 2003) ................................................................7

*Clark v. McDonald's Corporation*,
  213 F.R.D. 198 (D.N.J. 2003) ...............................................................7, 8

*Comcast Corporation v. Behrend*,
  133 S.Ct. 1426 (2013) ........................................................................14, 15

*Davoll v. Webb*,
  160 F.R.D., 142 (D. Colo. 1995) ...........................................................19

*DeBremaecker v. Short*,
  433 F.2d 733 (5th Cir. 1995) ................................................................16

*Dempsey v. Pistol Pete's Beef N Beer, LLC*,
  2009 WL 3584597 (D. N.J. 2009) .........................................................10

*Doran v. 7-Eleven, Inc.*,
  524 F.3d 1034 fn. 4 (9th Cir. 2008) ...............................................3, 11, 12

*Equal Rights Center v. Hilton Hotels Corporation*,
  2009 WL 6067336 (D.D.C. 2009) ...........................................................6

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................9

*General Telephone Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ..............................................................................19

*Green v. Borg-Warner Protective Servs. Corp.*,
  1998 WL 17719 (S.D.N.Y. Jan. 16, 1998) ............................................17

*Griffin v. Dugger*,
  823 F.2d 1476 (11th Cir. 1987) ...............................................................3

*Gutherman v. 7-Eleven, Inc.*,
  278 F.Supp.2d 1374 (S.D. Fla. 2003) ......................................................5

*Harris v. Stonecrest Care Auto Center, LLC*,
  472 F.Supp.2d 1208 (S.D. Cal. 2007)..............................................8, 9, 12

REGENCY THEATRES, INC.'S OPPOSITION TO MOTION
FOR CLASS CERTIFICATION
OC 287115825v1

2:13-cv-01428-JFW-JEM

*Helfand v. Cenco, Inc.*,
    80 F.R.D. 1 (N.D. Ill. 1977)...................................................................20

*Jackson v. Laureate, Inc.*,
    186 F.R.D. 605 (E.D. Cal. 1999) ..............................................................1

*Jeffries v. Pension Trust Fund*,
    172 F.Supp.2d 389 (S.D.N.Y. 2001) .......................................................17

*Johnson v. Mammoth Recreations, Inc.*,
    975 F.2d 604 (9th Cir. 1992) ....................................................................2

*Kirkpatrick v. J.C. Bradford & Co.*,
    827 F.2d 718 (11th Cir. 1987) ................................................................20

*Lee v. State of Or.*,
    107 F.3d 1382 (9th Cir. 1997) ..................................................................3

*Legrand v. New York City Transit Auth.*,
    1999 WL 342286 (E.D.N.Y. May 26, 1999) ...........................................17

*Lewis v. Casey*,
    518 U.S. 343 (1996)...................................................................................3

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).......................................................................9, 10, 13

*Mazus v. Dep't of Transp.*,
    489 F.Supp. 376(M.D. Pa. 1979) ............................................................17

*Moeller v. Taco Bell*,
    2012 WL 3070863 (N.D. Cal. 2012) .......................................................22

*Molski v. Kahn Winery*,
    405 F.Supp.2d 1160 (C.D. Cal. 2005) ................................................9, 10

*Moreno v. G & M Oil Co.*,
    88 F.Supp.2d 1116 (C.D. Cal. 2000) ....................................................4, 5

*Murray v. Auslander*,
    244 F.3d 807 (11th Cir. 2001) ..................................................................2

iv

*O'Connor v. Boeing North American, Inc.*,
180 F.R.D. 359 (C.D. Cal. 1997) ...................................................................17

*Prado-Steinman v. Bush*,
221 F.3d 1266 (11th Cir. 2000) ........................................................................2

*Pryor v. Aerotek Scientific, LLC*,
278 F.R.D. 516 (C.D. Cal. 2011) ...................................................................23

*Rodriguez v. Gates*,
2002 WL 1162675  (C.D. Cal. 2002) .............................................................24

*Ross v Nikko Sec. Co. Int'l, Inc.*,
133 F.R.D. 96 (S.D. N.Y. 1990) .....................................................................17

*Scherr v. Marriot International, Inc.*,
2013 WL 57857 (7th Cir. 2013) ........................................................................6

*Scherr v. Marriot International, Inc.*,
833 F.Supp.2d 945 (N.D. Ill. 2011) ............................................................5, 6

*Small v. General Nutrition Companies, Inc.*,
388 F.Supp.2d 83 (E.D. N.Y. 2005) .................................................................4

*Steven Brother v. Tiger Partner, LLC*,
331 F.Supp.2d 1368 (M.D. Fla. 2004) ...........................................................12

*Wal-Mart Stores, Inc. v. Dukes,*,
131 S.Ct. 2451 (2011) ...........................................................................9, 14, 15

*Warth v. Seldin*,
422 U.S. 490 (1975) ...........................................................................................2

*Wilson v. Costco Wholesale Corp.*,
426 F.Supp.2d 1115 (S.D. Cal. 2006) ............................................................12

*Wilson v. Kayo Oil Co.*,
535 F.Supp.2d at 1067, 1070 (S.D. Cal. 2007) ...............................................8

*Zinser v. Accufix Research*,
Inst., 253 F.3d 1180 (9th Cir. 2001) .........................................................13, 22

v

**State Cases**

*Donald v. Café Royale, Inc.,*

    218 Cal.App.3d 168 (1990) ...........................................................................23

*Dunbar v. Albertson's, Inc.,*

    141 Cal.App.4th 1422 (2006) .......................................................................24

*McCullah v. Southern Cal. Gas. Co.,,*

    82 Cal.App.4th 495 (2000) ...........................................................................19

*Raycraft v. Lee,*

    177 Cal.App.4th 1211 (2009) .......................................................................23

*Urhausen v. Longs Drug Stores California Inc.,*

    155 Cal.App. 4th 254 (2007) ........................................................................23

**Federal Rules**

F.R.C.P. 16(b)(4) .................................................................................................2

F.R.C.P. Rule 23 ...............................................................................................19

F.R.C.P. Rule 23(a) ..........................................................................................22

F.R.C.P. Rule 23(a)(3) ......................................................................................19

F.R.C.P. Rule 23(b) ..........................................................................................23

F.R.C.P. Rule 23(b)(2) .............................................................................21, 22, 23

F.R.C.P. Rule 23(b)(3) .........................................................................21, 22, 23, 24

F.R.C.P. Rule 23(c)(4) ................................................................................22, 23

**Federal Regulations**

28 C.F.R. § 36.211 ............................................................................................24

28 C.F.R. § 36.302 ............................................................................................24

28 C.F.R. § 36.303 ............................................................................................24

REGENCY THEATRES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION

2:13-cv-01428-JFW-JEM

OC 287115825v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Having already filed 8 identical lawsuits against movie chains this year alone, serial litigant Gerald Crosby ("Plaintiff"), an allegedly hearing-impaired individual, has now targeted Regency Theatres, Inc. ("Defendant") and seeks to certify an ADA class action against 29 of its movie theatre locations based on a single incident at a single location where Plaintiff pretends that his headset did not work for purposes of fabricating this lawsuit.  Plaintiff concedes that he has never been to any other locations, never intends to, and that he does not know whether their headsets work.  He is merely bringing this lawsuit as a class action to maximize the nuisance settlement value.

As explained in more detail below, the Court must deny Plaintiff's motion for class certification for several reasons: (1) Plaintiff's motion was filed 3 weeks after the deadline; (2) Plaintiff failed to show "good cause" to modify the scheduling order; (3) Plaintiff lacks standing because he has never been to any of Defendant's movie theatre locations except one which he does not intend to return to; and (4) Plaintiff cannot meet a single class certification requirement under Rule 23(a) or Rule 23(b).

## ARGUMENT

## I.   PLAINTIFF'S MOTION SHOULD BE DENIED OUTRIGHT AS UNTIMELY.

Plaintiff filed his motion 3 weeks late and thus it should be denied outright. Defendant was served on February 7, 2013.  (Golin Decl. ¶2).  According to the Court's Scheduling Order, "motions for class certification shall be filed in accordance with Local Rule 23-3."  (Docket #15 at 33).  L.R. 23-3 provides that Plaintiff shall file his motion for class certification "within 90 days of service" or, in this case, by May 8, 2013. Inexplicably, Plaintiff waited 3 weeks after the deadline to file his motion.  Thus, it must be denied and stricken as forewarned in the Court's Scheduling Order.  (Docket #15 at 5: "The Court will deny or strike late-filed motions"); *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 606 (E.D. Cal. 1999) (A scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril").

1

## II.   PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF HAS NOT SHOWN GOOD CAUSE TO MODIFY THE SCHEDULING ORDER.

Because his motion was untimely, Plaintiff was required, but failed to file a motion and show "good cause" to modify the scheduling order.   F.R.C.P. 16(b)(4).   The "good cause" standard focuses on an affirmative finding of diligence and is incompatible with a party's carelessness or inadvertent errors.   *See, e.g., Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-609 (9th Cir. 1992).   Plaintiff has not even attempted, much less shown, good cause.   Of course, it is too late for Plaintiff to attempt to do so in his reply.   Thus, Plaintiff's motion must be denied for this reason as well.

## III.   PLAINTFF'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF LACKS STANDING.

### A.   Plaintiff Must Have Individual Standing To Raise Each Claim And Cannot Fabricate Standing Merely By Making Class Allegations.

A plaintiff's standing to sue "is the threshold question in every federal case, determining the power of the court to entertain the suit."   *Warth v. Seldin*, 422 U.S. 490, 498 (1975).   "It is well-settled that prior to the certification of a class, and technically speaking before undertaking any formal typicality or commonality review, the district court must determine that at least one named class representative has Article III standing to raise each class subclaim."   *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001); *see also Prado-Steinman v. Bush*, 221 F.3d 1266 (11th Cir. 2000) (same).

"Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others.   It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert.   Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim."   *Prado-Steinmann v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000).

It is axiomatic that standing cannot be acquired through the back door of a class

2

1   action.  As explained by the Supreme Court in *Lewis v. Casey*, 518 U.S. 343 (1996):

2

3   "This is no less true with respect to class actions than with respect to other
    suits.  *That a suit may be a class action adds nothing to the question of*

4   *standing*, for even named plaintiffs who represent a class must allege and
    show that they personally have been injured, not that injury has been

5   suffered by other, unidentified members of the class to which they belong
    and which they purport to represent."  *Id*. at 358.

6

7   As stated by the Supreme Court in *Allee v. Medrano*, 416 U.S. 802 (1974):

8   "A named plaintiff cannot acquire standing to sue by bringing his action on
    behalf of others who suffered injury which would have afforded them

9   standing had they been named plaintiffs; it bears repeating that a person
    cannot predicate standing on injury which he does not share.  *Standing*

10  *cannot be acquired through the back door of a class action*."  *Id*. at 828-829.

11

12  *See also Lee v. State of Or*., 107 F.3d 1382, 1390 (9th Cir. 1997) ("The fact that Plaintiffs

13  filed their complaint as a class action is of no moment.  Standing is a jurisdictional

14  element that must be satisfied prior to class certification"); *Griffin v. Dugger*, 823 F.2d

15  1476, 1482 (11th Cir. 1987) ("A plaintiff cannot include class action allegations in a

16  complaint and expect to be relieved of personally meeting the requirements of

17  constitutional standing, even if the persons described in the class definition would have

18  standing themselves to sue").

19  **B.**     **In ADA Class Actions, The Named Plaintiff Must Show That He Has
            Individual Standing With Respect To Each Location He Is Suing.**

20

21  In this Circuit, it is well established that in order to establish standing in an ADA

22  case, the plaintiff must demonstrate that he encountered access barriers at each

23  noncompliant facility at issue in the lawsuit coupled with either (1) a concrete intent to

24  return to each noncompliant facility in the near future or (2) actual deterrence on

25  particular occasions.  *See, e.g., Chapman v. Pier 1 Imports (U.S.) Inc*., 631 F.3d 939, 949

26  (9th Cir. 2011) ("Demonstrating an intent to return to a noncompliant accommodation…

27  establish[es] Article III standing to pursue injunctive relief); *Doran v. 7-Eleven, Inc*., 524

28  F.3d 1034, 1041 fn. 4 (9th Cir. 2008) (We interpret this holding to mean that if a plaintiff

1  can show…that he was deterred from visiting the accommodation on specific past
2  occasions when he otherwise would have visited it because of the known barriers
3  there…[then] he has established an injury in fact sufficient for purposes of Article III
4  standing under *Pickern*).

5      As explained above, in class actions, a plaintiff must show that he has individual
6  standing to raise each claim.  ADA cases are not excepted from this rule and the named
7  plaintiff must show that he has individual standing with respect to each location he
8  wishes to sue.  The following cases are illustrative.

9      The plaintiff in *Small v. General Nutrition Companies, Inc.*, 388 F.Supp.2d 83
10 (E.D. N.Y. 2005), like Plaintiff here, tried to improperly expand his ADA class action
11 lawsuit to include stores that he had never been to.  He claimed that he regularly
12 purchased vitamins at various GNC stores in New York City, and that eleven of them had
13 architectural barriers.  *Id*. at 85.  With respect to one store, the plaintiff argued that he had
14 established an intent to visit the store in the future because he lived in the immediate
15 vicinity.  With respect to six stores, the plaintiff argued that his intent was established
16 because he regularly travelled within the immediate vicinity of the stores.  For the
17 remaining four stores, the plaintiff did not claim that he lived close or travelled nearby.

18     The court found that the plaintiff only had standing with respect to the store closest
19 to his house.  The court explained that "[P]laintiff [must] establish something more than a
20 general desire to patronize GNC stores.  Rather, petitioner must establish that but for the
21 barrier at a particular store, he would visit that store in the imminent future."  *Id*. at 89.

22     In *Moreno v. G & M Oil Co.* 88 F.Supp.2d 1116 (C.D. Cal. 2000), the issue was
23 "whether a disabled plaintiff who suffers discrimination due to an inappropriate
24 architectural barrier at one business location may sue for the existence of similar barriers
25 at the same defendant's other business locations where the plaintiff has not personally
26 suffered discrimination."  *Id.* at 1116.  In his initial complaint, the plaintiff alleged ADA
27 claims against the defendants' gas station and convenience store in Santa Fe Springs, at
28 which plaintiff alleged actual personal discrimination.  The plaintiff sought to amend his

4

1   complaint to include defendants' other 82 stores throughout California, even though

2   plaintiff had not visited any of those stores.  *Id.*  Thus, the court was confronted with the

3   question of "whether, having satisfied Article III as to one gas station, Plaintiff may

4   assert claims as to the other 82 stations." *Id.* at 1117.  The court concluded that standing

5   was "site specific" and does not extend to locations where the plaintiff has not personally

6   suffered discrimination.  *Id.* at 1116-1117.

7           Likewise, in *Gutherman v. 7-Eleven, Inc.*, 278 F.Supp.2d 1374 (S.D. Fla. 2003), an

8   ADA class action, the court held that the 42 plaintiffs lacked standing to assert claims

9   with respect to defendant's 6,000 convenience stores and gas stations nationwide

10  because, among other things, they failed to allege which locations the individual

11  plaintiffs had actually visited.

12          In *Scherr v. Marriot International, Inc.*, 833 F.Supp.2d 945 (N.D. Ill. 2011), the

13  plaintiff argued that, under the ADA, she had standing to sue not just the Marriot hotel

14  she had been to in Overland Park, but also 56 other Marriot hotels that were part of the

15  chain because she alleged a common non-compliant design policy:

16              "Scherr also claims that she has standing to seek injunctive relief against
                'approximately 56 additional Marriot Courtyard hotels'…and need not
17              engage in the 'futile gesture' of visiting all fiftypl-seven Courtyard Marriot
                hotels so long as she has 'actual notice' that Marriot does not intend to
18              comply with the ADA.  Scherr believes that she meets this standard because
                she is challenging a centralized decision by Marriot's corporate managers
19              that altered all fifty-seven renovated Courtyard Marriot hotels in the same
                manner." *Id.* at 954-955.
20

21  For its part, Marriot argued that "Scherr's centralized design theory is nothing more than

22  an attempt to disregard constitutional standing principles." *Id.* at 955.

23          The court agreed with Marriot and held that although plaintiff's common design

24  theory may be enough to satisfy the standing requirement that she have actual knowledge

25  of barriers at locations she has never been to, it did not somehow dispense with the

26  independent standing requirements that she intend to visit each of defendant's locations

27  in the near future or was deterred from visiting them on particular occasions:

28              "While Scherr's allegation of a common architectural defect may be enough,

                                                     5

at the motion to dismiss stage, to show awareness of existing barriers at the additional fifty-six hotels, she does not satisfy the other 'deterrent effect' requirements. Scherr does not allege that she was deterred from visiting a Courtyard Marriot on these eleven trips or that she would visit a particular Courtyard Marriot in the future but for the alleged barriers." *Id*. at 956.

On appeal, the Seventh Circuit upheld the district court's ruling that plaintiff lacked standing to sue the 56 Marriot hotels she had never been to, despite her "common design" theory. *Scherr v. Marriot International, Inc.*, 2013 WL 57857, *1 (7th Cir. 2013) ("While we agree that [Plaintiff] need not engage in the 'futile gesture' of traveling to each of the other fifty-six Courtyard Marriots to establish that she has actual knowledge of an alleged ongoing violation at each of the facilities, as we held above she still must assert an intent to return to the particular place (or places) where the violations are alleged to be occurring").

Likewise, in *Equal Rights Center v. Hilton Hotels Corporation*, 2009 WL 6067336 (D.D.C. 2009), another ADA case, the plaintiffs improperly tried to expand their standing to include 2,869 Hilton Family Brand hotels even though they only alleged knowledge of specific barriers at 24 of them.  The plaintiffs tried to circumvent standing requirements by alleging a common policy violative of the ADA. *Id*. at *7.  In determining the proper scope of plaintiffs' standing, the court used a two-step process.  First, the court applied the standing requirement that plaintiffs adequately allege knowledge of barriers as to each location they wanted to sue.  In this regard, the court held that plaintiffs' "common policy" allegation did not help them establish knowledge of barriers at locations other than the 24 they had visited or had inspected because it was conclusory. *Id*.  Then, the court applied the *additional* standing requirement that plaintiffs establish that they would visit each location and held that the scope of plaintiffs' lawsuit had to be further reduced down from the 24 hotels with known accessibility problems to the 4 hotels they intended to return to:

"Therefore, the scope of the plaintiffs' standing must be limited initially to those 24 Hilton Family Brand hotels with known accessibility problems.  It must be limited further because the plaintiffs…have only claimed a specific and imminent desire to return to the Hilton Ocean Front Resort in South Carolina, and the Hilton Washington, Capital Hilton, and Hilton Washington

6

1      Embassy Row in Washington, D.C.  The claims against all other Hilton
2      hotels must be dismissed."  *Id*. at *7.

3          Similarly, in *Clark v. Burger King Corporation*, 255 F.Supp.2d 334 (D. N.J. 2003),

4      the plaintiff brought an ADA class action against all Burger King restaurants nationwide

5      even though he had only been to a few.  The defendant moved to dismiss plaintiff's

6      claims based on lack of standing.  The court noted that absent an allegation of

7      commonality of construction or global non-compliant ADA policy, plaintiff "clearly

8      lack[ed] standing" as to restaurants he had never visited because he could not establish a

9      threat of injury as there was no showing that they were in violation of the ADA.  *Id*. at

10     343.  The court also noted that plaintiff lacked standing *for the additional reason* that he

11     had not established an intent to return to the locations he had never been to:  "Moreover,

12     Clark fails to demonstrate an intent to return to, or a likelihood of future injury at,

13     locations he has yet to visit, and thus, does not satisfy the injury in fact requirement to

14     establish standing with respect to these restaurants."  *Id*.

15         In *Clark v. McDonald's Corporation*, 213 F.R.D. 198 (D.N.J. 2003), the plaintiff

16     brought an ADA class action against all McDonald restaurants nationwide.  The plaintiff

17     had personally visited 23 McDonald restaurants and had sent his investigators to 38

18     others.  The defendant moved to dismiss plaintiff's claims based on lack of standing.  In

19     determining the proper scope of plaintiff's standing, the court noted that plaintiff must

20     show (1) "actual notice of an ADA violation existing at a location he has not yet visited";

21     and (2) an intent to visit those locations.  *Id*. at 230.  The court held that plaintiff failed to

22     meet either requirement:

23         "Clark does not allege 'actual notice' of any ADA violation at any of the
            corporate-owned McDonald's restaurants that he has not visited.  The
24         closest he comes to doing so is to allege (1) that the 'discriminatory features
            of Defendants' facilities are *generally known* to…Clark,' and (2) that he has
25         'discovered material violations of the ADA' at 38 corporate-owned
            McDonald's restaurants in Wisconsin, pursuant to an investigation
26         conducted by professional inspectors hired by Plaintiffs' attorneys.  As to
            the former allegation, it would be unreasonable for the Court to infer 'actual
27         notice' of an ADA violation at a particular restaurant that Clark has not
            visited from whatever 'general knowledge' he may possess about
28         discriminatory features said to be commonplace at McDonald's restaurants.

                                            7

As to the latter, even if it is reasonable to infer that Clark has 'actual notice' of ADA violations at Wisconsin restaurants he has not visited via hired inspectors – a matter the Court does not decide – Clark nevertheless lacks standing to assert claims as to those restaurants because he has not alleged (and is not excused from alleging) that he would visit the Wisconsin restaurants but for the violations of which he has actual notice." *Id*. at 230.

Finally, in *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666 (9th Cir. 2010), the plaintiffs challenged the district court's finding that they lacked standing under the ADA to sue theatres they had not been to. The Ninth Circuit embraced the district court's reasoning that "the Plaintiffs lacked standing to challenge a lack of accommodations in other theatres because 'they have not alleged they attempted to access any of Harkins other theatres or that they would access any of the other theatres if the requested services were provided'" and remanded the case back to the district court to determine in the first instance whether Plaintiffs had standing as to any other locations in light of their proposed new complaint which contained new allegations that they attempted to visit additional movie theatre locations. *Id*. at 675.

## C.   Plaintiff Must, But Cannot Show, That He Has Individual Standing With Respect To Any Of The Movie Theatre Locations.

Because of the trend of abusive ADA litigation, courts analyze an ADA plaintiff's standing with heightened scrutiny. *See e.g., Harris v. Stonecrest Care Auto Center, LLC*, 472 F.Supp.2d 1208, 1215 (S.D. Cal. 2007) ("Federal courts must be diligent in observing standing requirements. And, particularly in view of the recognized trend of abusive ADA litigation, special diligence and vigilant examination of the standing requirement are necessary and appropriate to ensure that litigation serves the purpose for which the ADA was enacted.")

Such scrutiny is necessary because so many plaintiffs fabricate standing by falsely alleging that they are frequent patrons of defendants' establishments and intend to return once the establishments are accessible. *See e.g., Wilson v. Kayo Oil Co.*, 535 F.Supp.2d at 1067, 1070 (S.D. Cal. 2007), overruled on other grounds, ("Concern over ADA litigation abuse is amply warranted…[A]n ADA plaintiff cannot manufacture standing to sue in federal court by simply claiming that he intends to return to the facility.")

1    Although standing may be generally be shown at the motion to dismiss stage by

2    simply providing general factual allegations of injury resulting from the defendant's

3    conduct, when standing is challenged at the class certification or summary judgment

4    stage, the plaintiff can no longer rest on mere allegations.  Rather, the plaintiff has the

5    burden to 'clearly and specifically set forth facts sufficient to satisfy Article III standing

6    requirements.  *Access 4 All v. Oak Spring, Inc*., 2005 WL 1212663, *4 (M.D. Fla. 2005);

7    *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Wal-Mart Stores, Inc. v.*

8    *Dukes*, 131 S.Ct. 2451, 2551 (2011).  Standing is determined as of the time of the filing

9    of the complaint.  *See e.g., Harris v. Stonecrest Care Auto Center, LLC*, 472 F.Supp.2d

10   1208, 1217 (S.D. Cal. 2007); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

11   *Inc*., 528 U.S. 167, 191 (2000).  In evaluating whether an ADA plaintiff has established

12   a likelihood of future injury by his professed intent to visit the subject property, courts

13   typically examine the following four factors: (1) the proximity of the place of public

14   accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's

15   business, (3) the definitiveness of plaintiff's plans to return, and (4) plaintiff's frequency

16   of travel near defendant.  *Molski v. Kahn Winery*, 405 F.Supp.2d 1160, 1163 (C.D. Cal.

17   2005).  General promises to return in the future or conditional promises are insufficient

18   to confer standing.  *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992)

19   ("'some day' intentions -- without any description of concrete plans, or indeed even any

20   specification of when the some day will be -- do not support a finding of the 'actual or

21   imminent' injury that our cases require").

22        The following cases are illustrative.  In *Molski v. Kahn Winery*, 405 F.Supp.2d

23   1160 (C.D. Cal. 2005), the plaintiff alleged that architectural barriers existed at

24   defendant's restaurant in violation of the ADA.  The defendant moved to dismiss for

25   lack of standing.  The plaintiff claimed that he had standing because he had visited the

26   restaurant once, encountered architectural barriers during his visit, and had an intent to

27   return to the facility in the future.  The court dismissed the case for lack of standing:

28

REGENCY THEATRES, INC.'S OPPOSITION TO MOTION          2:13-cv-01428-JFW-JEM
FOR CLASS CERTIFICATION
OC 287115825v1

"Where a plaintiff has visited a restaurant only once, the lack of a history of past patronage seems to negate the possibility of future injury at that particular location…[plaintiff] has expressed no definite plans to return to Kahn Winery. Instead, he only has stated a general intent to return sometime in the future. Generalized plans to return are insufficient to confer standing in an action for injunctive relief. *See Lujan*, 504 U.S. at 564 (holding that a profession alone of an intent to return is 'simply not enough' to confer standing). *Id*. at 1164, 1167-1168.

Likewise, in *Dempsey v. Pistol Pete's Beef N Beer, LLC*, 2009 WL 3584597 (D. N.J. 2009), the court found that an ADA plaintiff lacked standing because he had not met his burden of establishing that he had a concrete, particularized intent to visit the facility in the future:

"Plaintiff simply does not allege that he will ever return to Pistol Pete's, let alone provide the Court with any definitive plans to do so. To be sure, Plaintiff alleges that he 'desires' to return once the architectural barriers are removed, but mere desire is insufficient to show a real and immediate threat of a concrete and particularized injury…a general allegation of a desire to return is essentially the equivalent of pleading that Plaintiff may return 'some day.' As noted above, allegations of such 'some day' intentions simply will not do. *Defendants of Wildlife*, 504 U.S. at 563." *Id*. at *5.

Similarly, the court in *Access 4 All, Inc. v. Wintergreen Commercial Partnership, Ltd*., 2005 WL 2989307 (N.D. Tex. 2005) held that the following general statement of intent to visit defendant's property was insufficient to establish standing: "[Plaintiff] plans to return to the property to avail himself of the goods and services offered to the public at the property." *Id*. *4. Accordingly, the court dismissed the case.

In the same way, the court in *Access 4 All v. Oak Spring, Inc*., 2005 WL 1212663 (M.D. Fla. 2005) dismissed plaintiff's ADA lawsuit because plaintiff had not put forth any evidence establishing his intent to visit defendant's facility in the future "other than [his] bald assertion that he plans to return to [defendant's facility]." *Id*. at *4.

In this case, Plaintiff cannot show that he has standing with respect to any of the movie theatres at issue in this lawsuit. Plaintiff concedes that he has only been to 1 out of the 29 movies theatre locations identified in his complaint. (Complaint ¶11; Plaintiff Depo. at 19:12-20:12, attached as Exhibit A to Chilleen Decl.; Plaintiff's Response to Interrogatory No. 3, attached as Exhibit B to Chilleen Decl.). With respect to the movie theatre locations Plaintiff has not patronized, Plaintiff lacks standing for several reasons.

10

First, Plaintiff cannot establish that he has knowledge of any access barriers.  Indeed,

Plaintiff concedes that he has no idea whether captioning or working assistive-listening

devices are provided at these locations:

> Q:  Excluding the Westwood location, do you know whether or not any of
> the other Regency Theatre locations provide captioning?
> A:  I don't know.
> Q:  Excluding the Westwood location, do you know whether or not any of
> the other Regency Theatres have working assistive listening devices?
> A:  I don't know."[1]

(Plaintiff's Depo. at 20:19-21:1).

Thus, Plaintiff's claims fail for lack of standing for this reason alone.  *See, e.g.,*

*Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1041, fn. 4 (9th Cir. 2008) (ADA plaintiff must

establish "known barriers" at subject public accommodation).

Second, assuming *arguendo* that Plaintiff could somehow prove knowledge of

barriers at locations he has never patronized and that mere knowledge suffices for

standing purposes, he independently lacks standing because he cannot prove a concrete

intent to return in the near future or specific past occasions of deterrence.  Indeed,

Plaintiff concedes that he just intends to visit Defendant's movie theatre locations in the

City of Los Angeles of which there are only two.[2]  (Crosby Decl. ¶¶4, 11; Plaintiff's

Response to Defendant's Interrogatory No. 6).

Likewise, Plaintiff has not and cannot prove any specific instances of deterrence.

Plaintiff merely claims in a self-serving, conclusion fashion that following his one and

only visit to the 961 Broxton Avenue, Los Angeles location that he has "refrained from

patronizing any of Defendant's theatres because I anticipate experiencing the same

problems there repeatedly."  (Crosby Decl. ¶12).  However, Plaintiff fails to identify any

---

[1] Plaintiff learned from his counsel for the first time during a break in his deposition that his attorney supposedly called the movie theatre locations to see if they provided captioning.  (Plaintiff's Depo. at 41:15-25).  Of course, this does not help Plaintiff since standing is determined at the time of the filing of the Complaint.  Moreover, it is simply not true that Defendant does not provide closed captioning at any of its theatres.  (Golin Decl. ¶3).

[2] Defendant only has two movie theatres located in the City of Los Angeles.  They are located at 961 Broxton Avenue, Los Angeles, CA 90024 and 948 Broxton Avenue, Los Angeles, CA 90024.  (Golin Decl. ¶4).

11

specific instances of deterrence for the 28 movie theatre locations he has never been to. This is fatal to his claims. *See, e.g., Doran v. 7-Eleven, Inc*., 524 F.3d 1034, 1041 fn. 4 (9th Cir. 2008) (To establish standing, Plaintiff must show "that he was deterred from visiting the accommodation *on specific past occasions* when he otherwise would have visited it because of the known barriers there"). Nor could Plaintiff do so without perjuring himself since he has already conceded that he does not intend to visit any of Defendant's movie theatres except the two locations in Los Angeles and Plaintiff would have to declare that he was specifically deterred on 28 separate occasions between December 2012 when he first became aware of alleged barriers at the 961 Broxton Avenue location and the filing of his complaint in January 2013. Moreover, there is no reason for Plaintiff to travel approximately 60 miles to Orange County, 60 miles to Ventura County, 70 miles to the Inland Empire, or 100 miles to Bakersfield to see a movie at Defendant's non-Los Angeles locations when he could simply go to other movie theatres closer to his home in Los Angeles . (Golin Decl. ¶5; Request for Judicial Notice; Plaintiff's Response to Interrogatory No. 5).

Furthermore, the sheer number of theatres Plaintiff has sued precludes a finding of standing. In addition to the 29 movie theatre locations Plaintiff is suing in this lawsuit, Plaintiff has filed 8 different lawsuits against other movie chains since the beginning of this year alone. (Plaintiff's Response to Interrogatory No. 14). *See e.g., Harris v. Stonecrest Care Auto Center, LLC*, 472 F.Supp. 2d 1208, 1213 (S.D. Cal. 2007) ("the reality is that the plaintiff has sued so many different establishments [(20 of them)] that it is impossible to believe he routinely visits [them]); *Wilson v. Costco Wholesale Corp*., 426 F.Supp.2d 1115, 1123 (S.D. Cal. 2006) (plaintiff's declaration of intent to return to each of the 80 establishments he had sued was implausible, and finding plaintiff lacked intent to return to the specific facility at issue in that case); *Steven Brother v. Tiger Partner, LLC*, 331 F.Supp.2d 1368, 1374-75 (M.D. Fla. 2004) ("[Plaintiff] has professed an intent to return to all fifty-four properties he has sued. This is simply implausible").

Likewise, Plaintiff has not and cannot establish that he has standing as to the one

12

1  and only movie theatre location he actually visited.  Plaintiff only went there by chance

2  because his wife got pre-release tickets.  (Plaintiff's Depo. at 21:12-22:12; 22:20-23:1).

3  Despite having lived at his current residence for at least the last 5 years, Plaintiff had

4  never gone there before.  (Plaintiff's Depo. at 7:24-8:4).  Indeed, Plaintiff concedes that

5  he has no concrete plans to return to the 961 Broxton Avenue location (referred to as

6  "Westwood" in Plaintiff's Deposition):

> Q:  Do you have any particular plans to return to Westwood at this time?
> A:  …I don't know.  I have to wait until the movies come out and they're
> promoted to see what's playing there.
> Q:  Okay.  So you don't have any particular plans at this time?
> A:  No.

10  (Plaintiff's Depo. at 40:21-41:5; *see also* 20:1-11).  Plaintiff's sham declaration to the

11  contrary must be rejected as a matter of law.  Moreover, even if Plaintiff's declaration is

12  credited, as explained above, his general statement: "I intend to patronize Defendant's

13  movie theatres in Los Angeles in the near future" is insufficient as a matter of law.

14  (Crosby Decl. ¶11).  *See Lujan, supra* at 564 (holding that a profession alone of an intent

15  to return is 'simply not enough' to confer standing).

16      In sum, Plaintiff lacks standing to sue any of Defendant's movie theatre locations

17  and thus his motion for class certification must be denied in its entirety.[3]  To the extent

18  the Court somehow finds that Plaintiff has standing to sue the one location he actually

19  visited, then his motion for class certification must be limited to that single location.

20  **IV.   EVEN IF PLAINTIFF HAS STANDING (HE DOES NOT), HE CANNOT**
21  **MEET THE PREREQUISITES FOR CLASS CERTIFICATION.**

22      Plaintiff bears two "strict" burdens of proof for class certification.  First, Plaintiff

23  must present evidence satisfying all four of the prerequisites set forth in Rule 23(a).

24  Second, Plaintiff must show that the case falls into one of the three categories of cases

25  that Rule 23(b) defines as appropriate for class action treatment.  *See, e.g., Zinser v.*

26  *Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Rule 23(a) requires that the

27

28  ---
[3] Since Plaintiff is not seeking to certify a damages class, it is irrelevant whether Plaintiff has standing to
seek damages as to the single location he visited. 13

plaintiffs prove that: (1) there are questions of law or fact that are common to the class; (2) there is a well-defined, ascertainable class that is so numerous that joinder is impracticable; (3) the claims of the class representative are typical enough of the claims of the absent class member that resolution of the class representative's claims will fairly resolve the claims of the remaining class members; and (4) the class representatives and class counsel will adequately protect the interests of the absent class members.  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate compliance with the Rule – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact etc….certification is proper only if the trial court is satisfied, after a rigorous analysis, that the perquisites of Rule 23(a) have been satisfied… Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2451, 2551 (2011).

The recent Supreme Court decisions in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2451 (2011) and *Comcast Corporation v. Behrend*, 133 S.Ct. 1426 (2013) have redefined the class action landscape.  In *Dukes*, the Supreme Court addressed whether the plaintiff's theory of *liability* was susceptible to common proof and rejected the plaintiffs' argument that requiring common proof at the class certification stage depends too heavily on a premature determination of the merits.  In *Comcast*, the Supreme Court applied this "rigorous analysis" to the issue of whether the plaintiffs' *damages* theory was susceptible to measurement on a classwide basis and held that it was not.  The Supreme Court emphasized that a plaintiff must satisfy both the requirements of Rule 23(a) and Rule 23(b) through evidentiary proof.  *Id*. at 1432.  The Supreme Court also noted that Rule 23(b)(3)'s predominance criterion were even more demanding than Rule 23(a) and held that the Court of Appeal's refusal to wade into the merits of the plaintiffs' damages model was reversible error.  *Id*. at 1432-1433.

In this case, Plaintiff concedes that he cannot meet the certification requirements for a damages class under the above Supreme Court decisions.  However, Plaintiff still

1   seeks to maximize the nuisance value of this lawsuit by attempting to certify an

2   injunction and liability class.  However, as explained below, Plaintiff's scheme fails as he

3   cannot meet a single requirement of Rule 23(a) or satisfy the requirements of Rule

4   23(b)(2) and (3) and (c)(4).

5      **A.**  <u>**Plaintiff Cannot Meet The Prerequisites Of Rule 23(a).**</u>

6        1.  <u>Plaintiff Has Failed To Prove Commonality.</u>

7      In *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2451 (2011), the Supreme Court

8   expounded upon the standard of commonality under Rule 23(a).  The Supreme Court

9   explained that "any competently crafted class complaint literally raises common

10   questions" and that  "what matters to class certification…is not the raising of common

11   'questions' – even in droves – but, rather, the capacity of a classwide proceeding to

12   generate common answers apt to drive the resolution of the litigation." *Dukes*, at 2551.

13   "This does not mean merely that they have all suffered a violation of the same provision

14   of the law." *Id*.  Rather, the plaintiff must show that the class' injuries "*depend upon a*

15   *common contention*" that is "*capable of classwide resolution*." *Id*.  In other words, a

16   plaintiff must show "some glue" holding together the common issues of law and fact

17   such that a "common answer" can be produced. *Id*.  Moreover, the plaintiff must *prove*

18   the existence of the common questions of law and fact. *Id*.

19      Here, Plaintiff has utterly failed to provide the missing "glue."  Plaintiff merely

20   provides a list of allegedly common issues and then magically concludes that he has

21   satisfied the commonality requirement without any analysis whatsoever.  (Plaintiff's

22   Motion at 7-11).  In addition, as explained above, Plaintiff has not *proven* the existence

23   of common issues in the first instance as he concedes that he has no idea whether any of

24   Defendant's movie theatres have working assistive listening devices or closed captioning

25   except for the one he actually visited, he bases his entire theory of companywide

26   discrimination on a single visit to a single location, and he does not know of a single

27   potential class member that allegedly suffered a similar injury.  This is patently

28   insufficient.  As explained by the Supreme Court in *Dukes*, "there is a wide gap between

15

(a) an individual's claim that he has been [discriminated against]" and "his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that individual's claim and the class claim will share common questions of law and fact." *Id*. at 2553.  As in *Dukes*, Plaintiff does not allege that Defendant's Hearing Impaired Policy violates the law – Plaintiff does not even bother to mention it even though it was produced in discovery.  As in *Dukes*, Plaintiff's "anecdotal evidence" is "too weak to raise any inference" of classwide discrimination and even if Plaintiff's allegations were deemed true -- that on a single occasion, Plaintiff received a non-working assistive listening device -- it would not demonstrate that Defendant's entire chain discriminates "which is what [Plaintiff] must show to certify a companywide class."  *Id*. at 2556.

As further explained in Section IV, B below, there are simply no common answers that will drive the resolution of this litigation since liability issues are individualized.

For these reasons, Plaintiff has utterly failed to prove commonality.

### 2.   Plaintiff Has Failed To Prove Numerosity.

Rule 23(a)(1) requires that a class be so numerous that joinder of all members would be impracticable.  "While there is no set number of members is required, courts have generally found classes numbering in the hundreds to be sufficient to satisfy the numerosity requirement."  *Campbell v. PricewaterhouseCoopers, LLP*, 253 F.R.D. 586, 594 (E.D. Cal. 2008).  Moreover, in statutory class actions like this one, the Rule also requires that the proposed class be "ascertainable" and "manageable" -- which means that the proposed class members must have "accurately delineat[ed] membership in a workable class."  *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1995).  It is the plaintiff's' burden to propose a well-defined class whose members are capable of ready identification.  Put another way, a court must be able to determine whether an individual is contained within a proposed class without an "individualized analytical struggle*." In re Agricultural Chemicals Antitrust Litig*., WL 787538 (N.D. Fla. 1995); *Buford v. H & R* ///

REGENCY THEATRES, INC.'S OPPOSITION TO MOTION FOR CLASS CERTIFICATION                    2:13-cv-01428-JFW-JEM

OC 287115825v1

*Block, Inc.*, 168 F.R.D. 340, 347 (S.D. Ga. 1996). "A class definition should be precise, objective, and presently ascertainable." *O'Connor v. Boeing North American, Inc.*, 180 F.R.D. 359, 367 (C.D. Cal. 1997). Plaintiff has failed to meet any of these prerequisites.

It is well established that raw population data is insufficient to establish numerosity; it must be tied to actual discrimination. *See, e.g., Green v. Borg-Warner Protective Servs. Corp.*, 1998 WL 17719, *1-4 (S.D.N.Y. Jan. 16, 1998) (census data unconnected to actual violation of rights insufficient to determine class); *Mazus v. Dep't of Transp.*, 489 F.Supp. 376, 378, fn.3, 387-88 (M.D. Pa. 1979) *aff'd in relevant part*, *Mazus v. Dep't of Transp.*, 629 F.2d 870, 875-876 (3rd Cir. 1980) (denying class certification for lack of numerosity because plaintiffs relied on overly broad census data); *Legrand v. New York City Transit Auth.*, 1999 WL 342286, *3-5 (E.D.N.Y. May 26, 1999) (numerosity not satisfied because the statistical data on number of pregnant women in company had no relation to the number of such women who suffered pregnancy discrimination); *Jeffries v. Pension Trust Fund*, 172 F.Supp.2d 389, 394 (S.D.N.Y. 2001) (overall number of laid off employees does not establish numerosity absent evidence that those employees suffered the alleged injury; although the court may make common sense assumptions to support a finding of numerosity, it cannot do so "on the basis of pure speculation without any factual support"); *Ross v Nikko Sec. Co. Int'l, Inc.*, 133 F.R.D. 96 (S.D. N.Y. 1990) (holding that statistical data must show a statistically significant number of similarly situated aggrieved employees in relation to the overall number of employees in company).

In other disability discrimination cases, numerosity has been found lacking due to the plaintiff's' referring to "millions of people in the class" based on general disability population figures as Plaintiff does here. *See, e.g., Celano v. Marriott Int'l, Inc.*, 2007 WL 1149113 (N.D. Cal. 2007) (holding that plaintiff's application of the percentage of adults who play golf to the number of adults who are mobility impaired based on general census data and statistics were too ambiguous and speculative to establish numerosity because they did not shed light on how many disabled people would like to play golf at

17

1  Marriott courses).[4]

2      Here, Plaintiff improperly relies on nothing more than overbroad census data to

3  attempt to discharge his burden that the putative class is so numerous that joinder is

4  impracticable.  Plaintiff provides zero information regarding the number of people who

5  visit Defendant's movie theatres, much less any information regarding how many

6  hearing-impaired individuals patronize them.  Furthermore, even if Plaintiff had provided

7  such information, it would be insufficient to ascertain the class.  Plaintiff needs to

8  identify the number of hearing-impaired individuals who were provided faulty assistive-

9  listening devices.  Plaintiff concedes that he is not aware of a single potential class

10 member.  (Plaintiff's Depo. at 40:6-8).  Given that Plaintiff's entire class action

11 complaint is based on a single experience at a single movie theatre and that he concedes

12 that he has no reason to believe that Defendant does not have working assistive-listening

13 devices at its other movie theatres or that his alleged experience was a mischance, there is

14 simply no evidence to suggest, much less establish, that the proposed class would be

15 numerous.  It is much more likely that Plaintiff has fabricated the entire incident.  Indeed,

16 since the beginning of this year alone, Plaintiff has filed 8 lawsuits against movie

17 theatres, alleging identical allegations – what are the odds that not a single movie theatre

18 has working assistive-listening devices?  (Crosby Lawsuits, Exhibit D to Chilleen Decl.)

19     Knowing that he has failed to meet his burden, Plaintiff desperately tries to blame

20 Defendant for not providing adequate discovery responses.  For example, Plaintiff claims

21 that Defendant refused to answer his requests for admissions regarding the number of

22 times it has loaned out assistive listening devices.  (Plaintiff's Motion at 6).  This is a

23 blatant lie.  To the contrary, Defendant denied that it has loaned out more than 1,000

24 assistive-listening devices.  (Defendant's Supplemental Responses to Plaintiff's Requests

25 for Admissions Nos. 42, 43 and 44, attached as Exhibit C to Chilleen Decl.).  Of course,

26 to the extent that Plaintiff was not satisfied with any of Defendant's discovery responses,

27
28
[4] The cases cited by Plaintiff are inapposite because there, in addition to census data, the plaintiffs either provided information regarding the number of disabled people who patronized defendant's business or the number of transactions conducted by the defendant.  Here, Plaintiff has provided neither.

REGENCY THEATRES, INC.'S OPPOSITION TO MOTION          2:13-cv-01428-JFW-JEM
FOR CLASS CERTIFICATION
OC 287115825v1

1   then he should have timely filed a motion to compel or asked for an extension to the class

2   certification deadline.  Plaintiff did neither so he cannot be heard to complain.

3                          3.   <u>Plaintiff Has Failed To Prove Typicality.</u>

4          To demonstrate typicality, a plaintiff must show that his claims are typical of the

5   class.  F.R.C.P. 23(a)(3).  To meet this burden, the plaintiff must present actual evidence;

6   mere argument or conclusory allegations are insufficient.  *Belles v. Schwieker*, 720 F.2d

7   509, 515 (8th Cir. 1983) ("Proof of typicality requires more than general conclusory

8   allegations."); *Brooks v. Southern Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 56 (S.D. Fla.

9   1990) ("The Court cannot rely on conclusory allegations which parrot the provisions of

10  Rule 23 to support certification").  The typicality requirement and the commonality

11  requirement are related, and therefore the arguments made against commonality above

12  are applicable here as well.  *General Telephone Co. of the Southwest v. Falcon*, 457 U.S.

13  147, 157-58 (1982).

14         Here, Plaintiff does not present any evidence of how his claims are typical of the

15  putative class.  Indeed, a review of the typicality section of Plaintiff's brief shows that he

16  merely notes that other courts have found typicality and then concludes, with no

17  supporting evidence, that his "claims are identical to those of the class he seeks to

18  represent."  (Plaintiff's Motion at 11).  This bare conclusion, unsupported by any actual

19  evidence, is precisely what the *Belles* and *Brooks* cases have found to be insufficient.

20         As explained in Section IV, B, there can be no "typical" claim in this case as

21  liability, causation and damages are fact-specific, individualized inquiries.

22         Courts have recognized the difficulty of class-wide treatment of ADA claims for

23  these very reasons.  *See McCullah v. Southern Cal. Gas. Co.*, 82 Cal.App.4th 495 (2000)

24  (denying class certification because, among other reasons, plaintiff's claims were not

25  typical).  Whether someone is disabled under the ADA is a case-by-case determination,

26  *Davoll v. Webb*, 160 F.R.D., 142, 145 (D. Colo. 1995), as is the issue of impairment of a

27  major life activity, *Chandler v. City of Dallas*, 2 F.3d 1386, 1396 (5th Cir. 1993).

28         Plaintiff's own deposition testimony proves the point.  Plaintiff testified that

                                              19

hearing loss affects everyone in different ways and that for some people assistive-listening devices are useless with closed captioning being the only option:

> Q:  And why is that?
>
> A:  Because hearing loss is complicated.  It's like if you – like all of us sitting here right now.  If we all had hearing loss, none of our loss would be the same…It's individual levels.  Hearing loss is complicated.
>
> Q:  Well, if a headset works for one person who has hearing loss, wouldn't it work for all people with hearing loss?
>
> A:  …Well, that depends – now, that depends on what level of loss they have.  If they're on the verge of deafness, captioning is definitely going to be their only way, so it would depend on the level of loss.

(Plaintiff's Depo. at 38:1-20).

There are several other reasons why Plaintiff's claims are not typical.  First, Plaintiff does not use captioning, just headsets, so he cannot represent any hearing-impaired individuals who use captioning.  (Plaintiff's Depo. at 12:17-21; 22:13-19).  Second, as noted above, Plaintiff does not have any deterrence claims and thus he cannot represent class members who have such claims.  Third, as explained above, Plaintiff's claims are not typical because he lacks standing to sue any of Defendant's movie theatres and thus is subject to unique defenses.  Under these circumstances, Plaintiff has failed to satisfy the typicality requirement.

### 4.   Plaintiff And His Counsel Have Failed To Prove Their Adequacy.

Individuals are not adequate representatives of a class when "it appears that they have abdicated any role in the case beyond that of furnishing their names as plaintiffs." *Helfand v. Cenco, Inc.*, 80 F.R.D. 1, 7 (N.D. Ill. 1977).  "Several district courts thus have properly denied class certification where the class representatives had so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class…" *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir. 1987).

Here, Plaintiff is inadequate as he has had no involvement in this lawsuit other than the lending of his name.  As evidenced by his deposition testimony, Plaintiff

20

mistakenly believes he is suing only one location, he has only spent one hour on this case, he not done a single thing as a class representative, and he does not even know whether a motion for class certification has been filed:

> Q:  Do you know how many Regency Theatre movie locations you are suing as part of this lawsuit?
> A:  I think just the one on Broxton.
> Q:  What actions have you taken as a class representative, if anything, to date?
> A:  None.
> Q:  Do you have any understanding of how you would go about locating potential class members?
> A:  No, I don't.
> Q:  Have you tried to locate any?
> A:  No.
> Q:  Are you funding any part of this lawsuit?
> A:  No.
> Q:  Are you aware of whether a motion for class certification has been filed or not?
> A:  I don't know.
> Q:  Do you know what motions, if any, have been filed to date?
> A:  No.
> Q:  How many hours have you spent assisting in this case, other than your time here today at deposition?
> A:…On this one?  I would just – I don't know.  An hour, two hours.  I can't be sure.  I don't keep track of the time, really.

(Plaintiff's Depo. at 20:16-18; 32:6-8; 32:22-33:3; 33:8-13; 33:19-21; 34:21-23).

Likewise, Plaintiff's attorneys have not proven that they are adequate.  Julie Merhban just passed the bar in 2010.  Morse and Julie Merhban's only experience in class actions appears to be a single lawsuit where they were "one of the attorney's" on the case.  They have never successfully certified a single class action on their own.

**B.**  **Plaintiff Cannot Meet the Prerequisites Of Rule 23(b)(2), (3) Or Rule (c)(4).**

Rule 23(b)(2) requires that a plaintiff show "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief…is appropriate respecting the class as a whole."  F.R.C.P. 23(b)(2).

To meet Rule 23(b)(3)'s requirements, "common questions must predominate over any questions affecting only individual members and class resolution must be superior to other available methods for the fair and efficient adjudication of the

21

controversy…deciding whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case.  This predominance inquiry is more demanding than the commonality requirement of Rule 23(a) and requires the Court to consider how a trial on the merits would be conducted if a class were certified.  The predominance standard is meant to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation and prevent the litigation from degenerating into a series of individual trials."  *Castro v. Collecto, Inc.*, 256 F.R.D. 534, 538-539 (W.D. Tex. 2009).  "If the main issues in a case require the separate adjudication of each class member's individual claim or defense…a Rule 23(b)(3) action would be inappropriate" because "the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001).

Rule 23(c)(4) states that "when appropriate, an action may be brought or maintained as a class action with respect to particular issues."  F.R.C.P. 23(c)(4).

In this case, Plaintiff tries to make an end-run around *Dukes* and *Comcast* by pretending that the concerns which made class certification improper in those cases magically disappear because Plaintiff seeks to certify an injunction and liability class, but not a damages class.  This is nonsense and courts have repeatedly rejected this exact argument.

The case of *Moeller v. Taco Bell*, 2012 WL 3070863 (N.D. Cal. 2012) is illustratrive.  There, the plaintiffs filed a class action lawsuit on behalf of mobility-impaired individuals alleging that architectural barriers and discriminatory policies existed at defendant's restaurants in violation of the ADA, the California Unruh Act, and the California Disabled Persons Act.  The plaintiffs sought injunctive relief and statutory damages.  The court certified the class under Rule 23(b)(2) in 2004.  Later, the court also issued an order entitling the plaintiffs to partial injunctive relief.  However, after *Dukes* was published, defendant filed a motion to decertify the class.  For their part, the

22

plaintiffs tried to circumvent *Dukes* by using Rule 23(c)(4) to manufacture compliance with Rule 23(b).  In particular, the plaintiffs filed a motion to alter and amend the certification order to certify "the 'issue' of liability for damages under Rule 23(b)(2), and to certify the 'issue' of the amount of damages under Rule 23(b)(3)."  *Id*. at *2.

The court held that the plaintiffs could not skirt *Dukes* in this manner because *both liability and damages were individualized issues* which made class certification improper either under Rule 23(b)(2) or Rule 23(b)(3).  First, the court explained why certification of classwide liability was improper under Rule 23(b)(2):

> "The court finds, however, that the issue of classwide liability cannot be separately certified under Rule 23(b)(2) through the application of the Rule 23(c)(4) issue-certification procedure.  California courts have held that to maintain an action under the CDPA, a plaintiff must establish that he or she was denied equal access to a public facility on a particular occasion.  *See Donald v. Café Royale, Inc*., 218 Cal.App.3d 168, 183 (1990); *see also Raycraft v. Lee*, 177 Cal.App.4th 1211, 1123 (2009); *Urhausen v. Longs Drug Stores California Inc*., 155 Cal.App. 4th 254, 263-66 (2007*); Boemio v. Love's Rest*., 954 F.Supp. 204, 207-08 (S.D. Cal. 1997).  Thus, the issue of liability for damages cannot be determined on '*grounds generally applicable to the class*.'  Fed. R. Civ. P. 23(b)(2)."  *Id*. at *4.

Next, the court explained why certification was improper under Rule 23(b)(3):

> "Similarly the issue of classwide damages cannot be separately certified under Rule 23(b)(3) through the application of Rule 23(c)(4), because damages for California disability claims are inextricably interwined with individualized liability questions, and it is thus impossible to make an across-the-board conclusion as to the recovery of damages by any class member.  An individual class member's claim for damages cannot be adjudicated simply by demonstrating the mere presence of an alleged non-compliant feature.  Each class member must show how he or she was personally affected and was denied full and equal access by the defendant.  *See, e.g., Urhausen*, 155 Cal.App.4th at 266."  *Id*. at *5.

Finally, the court emphasized that issue certification simply did not work in disability access actions because liability, causation and damages are individualized determinations:

> "Put another way, because damages must be based on an individualized determination of liability, common questions of law and fact regarding entitlement to damages do not predominate over questions affecting only individual members.  It is not only damages that are individualized, but also liability and causation, because the issue is whether an individual class member has any claim at all.  *See Pryor v. Aerotek Scientific*, LLC, 278 F.R.D. 516, 532-33 (C.D. Cal. 2011).  Such fact-specific individual liability

23

1  and damages questions cannot be determined on a classwide basis.
2  *Rodriguez v. Gates*, 2002 WL 1162675 at \*11 (C.D. Cal. 2002); *see also*
   *Dunbar v. Albertson's, Inc.*, 141 Cal.App.4th 1422, 2427 (2006)…'[I]ssue
3  certification should never be undertaken lightly, or used to 'fix' manifest
   Rule 23(b)(3) predominance problems presented where key issues going to
4  liability require individualized proof.'  McLaughlin on Class Actions (2011)
   § 4:43." *Id.* at \*5, 6.

5      As in *Moeller*, certification is improper in this case because liability and causation
6  require individualized proof that cannot be determined on "grounds generally applicable
7  to the class" and thus "common questions of law and fact" do not predominate over
8  individualized issues and a class action would not be a superior method of adjudication.

9      Because of the individualized nature of liability, no one class member's experience
10 could establish classwide liability, among other things, there would need to be a finding –
11 for each class member (and for each visit) – regarding which movie theatre location
12 he/she visited, when the visit occurred, whether the particular assistive-listening device
13 provided was working, whether the assistive-listening device system in the particular
14 auditorium was working, whether closed captioning was provided, what his/her disability
15 was and its scope, and whether he/she was denied equal access to Defendant's services at
16 that particular movie theatre location. *See Moeller, supra* at \*5.

17     In addition, Defendant's affirmative defenses would need to be taken into account
18 and they would vary based on the particular movie theater location and/or the particular
19 class member's experience.  For example, under 28 C.F.R. § 36.211, temporary
20 interruptions in service or access due to maintenance or repairs are not actionable.  Thus,
21 for each class member's experience with a particular assistive listening device, there
22 would need to be a finding regarding how quickly a working replacement was provided
23 and whether the delay was actionable.  Likewise, for each movie theatre, there would
24 need to be findings regarding whether providing closed captioning for each auditorium
25 would "fundamentally alter the nature" of the services provided or impose an "undue
26 burden." 28 C.F.R. §§ 36.302, 36.303.

27     All of the problems are compounded by the facts that Plaintiff lacks standing to
28 sue any of Defendant's theatres, he has not submitted any evidence that there are any

1    alleged violations at any of Defendant's theatres other than the one he visited, and even

2    as to that one, his experience is limited to a single visit.  There is simply no reason for

3    this case to be brought as a class action.  It should be a single plaintiff, single location

4    lawsuit at best.

5                                              **CONCLUSION**

6         For all of the above reasons, Plaintiff's motion for certification must be denied in

7    its entirety.

8    DATED: June 17, 2013                      GREENBERG TRAURIG, LLP

9

10                                     By /s/ *Michael J. Chilleen*
                                           _____
11                                         GREGORY F. HURLEY
                                           MICHAEL J. CHILLEEN
12                                         Attorneys for REGENCY THEATRES INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REGENCY THEATRES, INC.'S OPPOSITION TO MOTION                    2:13-cv-01428-JFW-JEM
FOR CLASS CERTIFICATION
OC 287115825v1